UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 0:14-CV-61573-RLR

STEVE EVANTO,

        Plaintiff,

vs.

FEDERAL NATIONAL MORTGAGE ASSOCIATION and GREEN TREE SERVICING, LLC,

        Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW[1]**

Pursuant to Local Rule 7.1, Plaintiff, STEVE EVANTO, ("Plaintiff") hereby responds to Defendants', FEDERAL NATIONAL MORTGAGE ASSOCIATION ["Fannie Mae"] and GREEN TREE SERVICING, LLC ("Green Tree"), Motion to Dismiss Plaintiff's Amended Complaint (hereinafter the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully requests this Honorable Court enter an Order denying the relief sought by Defendants. In support of his response, Plaintiff submits the incorporated memorandum of law.

**I. INTRODUCTION AND BACKGROUND**

The action before this Court arose from Green Tree's failure to comply with the Truth In Lending Act, 15 U.S.C. § 1601, *et seq*. ("TILA"), and its implementing regulations. Specifically, Plaintiff seeks the remedies as provided in TILA for Green Tree's failure to timely provide an accurate payoff statement as required by 15 U.S.C. § 1639g.

---

[1] Plaintiff has dropped Defendant, Green Tree from this action and shall proceed with his claim against Fannie Mae. *See* [D.E. 24]. Therefore, Plaintiff shall only address the issues raised in the Motion as they pertain to Fannie Mae.

In his one-count Amended Complaint, Plaintiff alleges that Green Tree was the servicer of the subject loan, and that "on or about February 18, 2014, Loan Lawyers—on behalf of Plaintiff—mailed to GREEN TREE a written request for information pursuant to TILA, Regulation X, and Regulation Z ("Plaintiff's RFI")"  [D.E. 16, ¶ 26]. Although obligated to do so in accordance with Federal statutes, "GREEN TREE has failed or refused to provide an accurate payoff statement within seven (7) business days after receiving a request, contrary to 15 U.S.C. § 1639(g) and 12 C.F.R. § 1026.36(c)(3)" [Id. at ¶ 41].

**II. MEMORANDUM OF LAW**

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court's review is "limited to the four corners of the complaint." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (quoting St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002)). Additionally, a court must view the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true.  Hishon v. King v. Spalding, 467 U.S. 69 (1984); Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043 (11th Cir. 2007).

Once a court identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth, the court must next determine whether the well-pled facts state a claim to relief that is "plausible on its face". Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955).  Plaintiff has "well-pled" the facts that gave rise to his Amended Complaint. The facts supporting each element of the cause of action are pled. Thus, Plaintiff has stated a valid cause of action.

In the Motion, Defendants raise several issues. First, Defendants argue that Fannie Mae has no liability under Section 1640(a) because it is not a "creditor" of the loan at issue. Second, Defendants argue that there is no private right of action for a violation of 12 C.F.R.

2

1026.36(c)(1)(iii).² However, Plaintiff is not pursuing an action under 12 C.F.R. § 1026.36(c)(3), but rather under Section 1640(a) for Defendants' violation of Section 1639g of TILA. *See* [D.E. 16 at ¶¶ 47-53]. Plaintiff will argue that a private right of action that exists for violations of Section 1639g. Lastly, Defendants argue that Fannie Mae cannot be held vicariously liable for its servicer's TILA violation.

### A. Section 1640(a) applies to Assignees of mortgage loans

Fannie Mae argues that it cannot be liable under Section 1640(a) because it is not the "creditor" of the loan at issue and that Section 1640(a) only provides liability for creditors who violate TILA. [D.E. 21 at 3]. Fannie Mae does however concede that it is an "assignee" of the loan at issue [Id.](Fannie Mae is […] an assignee of the loan, as Plaintiff has correctly alleged in paragraph 6 of his Amended Complaint). Defendants seemed to have missed the mark here because they neglected to mention in the Motion that TILA provides for "assignee" liability. The relevant subsection of TILA regarding assignee liability is found at Section 1641(e)(1), which states:

> **(e) Liability of assignee for consumer credit transactions secured by real property**
> **(1) In general**
> Except as otherwise specifically provided in this subchapter, **any civil action against a creditor** for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property **may be maintained against any assignee of such creditor** only if—
> **(A)** the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and
> **(B)** the assignment to the assignee was voluntary.

15 U.S.C. § 1641(e)(1)(emphasis added).

### a. The limitation on "Assignee" liability under 15 U.S.C. § 1641(e) is not applicable to violations that can only occur post-origination

---

² Defendants incorrectly cite the applicable regulation. The proper citation is 12 C.F.R. § 1026.36(c)(3).

3

As a threshold matter, "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent." Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998).

Although not raised in the Motion, a common issue the Courts in the Southern District of Florida have been faced with is whether a failure to provide a payoff statement is the type of "disclosure" contemplated by Section 1641(e) for purposes of assignee liability. For the reasons set forth below, and in alignment with the majority of courts in the Southern District of Florida that have ruled on this issue, Plaintiff asks this court to find that the limitation on assignee liability does not apply to violations that can only occur post-origination.

Most recently, in Lucien v. Federal Nat. Mortg. Ass'n, 2014 WL 2184934 (S.D. Fla. 2014), the Honorable Paul C. Huck held that:

> "[B]ecause the **informational requirements**, such as the request for a **payoff statement** in this case, **can only arise after origination**, **Congress's limitation on Assignee liability in § 1641(e) was not intended for these situations**. Rather, the limitation on assignee liability properly refers only to the "assignee's liability for the original creditor's violation of the act," Vincent, 736 F.3d at 107 (quoting S.Rep. No. 96–73, at 18 (1979)), and does not limit the assignee's liability for post-assignment violations. As Judge Dimitrouleas reasoned in Runkle, "if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers." Id."

Lucien, 2014 WL 2184934 at *8 (emphasis added).

Plaintiff asserts that the limitation on assignee liability under Section 1641(e) does not apply to post-origination violations and urges the Court to view its analysis in light of the amendments to TILA. To hold otherwise would mean that there can *never* be liability for a violation of 15 U.S.C. § 1641(g) or 15 U.S.C. § 1641(f)(2).

Plaintiff submits that Section 1641(g) confirms that assignee liability is not limited to disclosures in connection with the origination of the loan. Section 1641(g) governs disclosures

4

that must be made by new assignees[3]. To state the obvious, a new assignee can only occur after the origination of the loan. Thus, if assignee liability is limited only to disclosures apparent on the face of the disclosures statement provided in connection with the origination of the loan or in advance of the credit decision, there could never be liability for a violation of Section 1641(g) because, by definition, it requires disclosures that cannot be initial or advanced disclosures. This certainly cannot be the intent of Congress—who deliberately inserted Sections 1641(f) and (g) into Section 1640(a).

Moreover, Section 1641(f)(2) also deals with disclosures that only arise post-origination[4]. It is also important to note that this requirement was seated in the section dealing with assignees.

If the Court limits assignee liability solely to initial or advanced disclosure violations, Congress' deliberate insertion of these sections will be rendered meaningless. Sections 1641(f)(2) and 1641(g) demonstrate that an assignee's liability is not limited to disclosures that occurred pre-origination. The same rationale applies to Section 1639g. It is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect". U.S. v. Nordic Village Inc., 503 U.S. 30, 36 (1992).

Plaintiff suggests that where Section 1641(e)'s limitation on assignee liability is relevant

---

[3] Section 1641(g) provides as follows:
   (g) Notice of new creditor
      (1) In general
         In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--
            (A) the identity, address, telephone number of the new creditor;
            (B) the date of transfer;
            (C) how to reach an agent or party having authority to act on behalf of the new creditor;
            (D) the location of the place where transfer of ownership of the debt is recorded; and
            (E) any other relevant information regarding the new creditor.

[4] ...Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

would be in the event that a violation has *occurred* pre-origination. Plaintiff submits that this is because an assignee should only be liable for a violation that has *occurred* pre-origination—by a *prior* loan owner—if the *pre-origination* violation is apparent on the face of the disclosure statement where the assignee knew or should have known of the violation when it received the origination documents. Conversely, Plaintiff submits that an assignee who is assigned a loan and commits a violation thereafter, should be held liable for said violation and Congress' specific insertion of Section 1641(f) and (g) into Section 1640 reflects this position.

Further, at least two other courts in the Southern District of Florida have addressed this exact issue, which were cited by Judge Huck in Lucien. St. Breux v. U.S. Bank, Nat. Ass'n, 919 F. Supp. 2d 1371 (S.D. Fla. 2013) and Cenat v. U.S. Bank, N.A., 930 F. Supp. 2d 1347 (S.D. Fla. 2013). In Cenat, Judge Kenneth Marra adopted and incorporated Judge William P. Dimitrouleas's following reasoning in St. Breux:

> First, TILA provides that assignees are liable just like creditors, so long as the TILA violation is "apparent on the face of the disclosure statement." § 1641(a). Setting aside the "apparent on the face" language for a moment, subsection (a) makes it apparent that assignees can be liable like creditors. Such a result makes sense. **The only difference between a creditor and an assignee is that the creditor originates the loan and then owns the obligation, whereas an assignee only receives the ownership of the loan without having originated the loan.** See 15 U.S.C. §§ 1602(g), 1641(a). The type of conduct that violates TILA's informational request provisions **like asking for a payoff statement**, however, **only arises post-origination**. The distinction between originator and assignee therefore is irrelevant.
>
> From a policy perspective, if a creditor is going to be liable for employing an irresponsible servicer, an assignee, who is acting just like a creditor, should also be liable for its irresponsible servicers. In the assignment setting, the servicer is acting as the assignee's agent in the same way that a servicer is acting as a creditor's agent had there been no assignment. Servicers in both cases are trying to make sure that loan payments are received as required under the obligation's terms. Because the relationship is the same, liability principles should be the same.
>
> Furthermore, just as it did not make sense to absolve all parties of liability in the creditor context, see *Khan v. Bank of New York Mellon*, 849 F.Supp.2d 1377, 1382

(S.D.Fla.2012), it similarly makes no sense to absolve the assignee of all liability. Once the assignee receives the assignment, the assignor is most likely out of the picture. If an assignee were not responsible for its servicer's conduct, no party could be liable. Id. There has to be some liability in order for it to make sense for Congress to have created a cause of action for violating TILA, and it makes sense to hold the assignee liable.

The wrinkle, which was set aside for a moment, is that for an assignee to be liable, the TILA violation must be "apparent on the face of the disclosure statement." § 1641(a). **It is apparent from the face of Seterus' response that no payoff statement was attached**. Fannie Mae argues that § 1641(a) means that an assignee can only be liable for documents created at the time of the origination of the loan (Fannie Mae's interpretation of "disclosure statements"), which documents were assigned to the assignee. If so, then an assignee would not be liable for a post-assignment TILA error. The Court must resolve whether § 1641(a) prohibits a Plaintiffs from placing liability on an assignee after the assignment has been completed, such as when an assignee's servicer violates TILA.

The Court does not believe that assignees are only liable for lending errors arising prior to the assignment. Such a rule would allow assignees to retain the sloppiest servicers without any risk. The Court finds support for the imposition of vicarious liability from sister district courts.

In *Rinegard–Guirma v. Bank of America NA*, 10–cv–01065, 2012 WL 1110071, at *9 (D. Or. Apr. 2, 2012), the assignee argued that § 1641(a) limited its liability for botched post-assignment informational requests. The court acknowledged that "a servicer's failure to provide information to a borrower about the owner of her loan in violation of § 1641(f)(2) is not the type of defect that would be apparent on the face of a disclosure statement, since a servicer's role only begins after disclosures are made." Id. at *9. The court found, however, that an interpretation of TILA that did not hold assignees liable would "conflict with the purpose of Congress' 2009 TILA amendment, other statutory language within TILA, and case law recognizing the possibility that assignees of creditors can also be held liable for servicer's § 1641(f)(2) violations." Id. at *10. Citing Khan, the court noted that assignees obviously can be liable for failing to disclose information, pointing to the rule that servicers who are also assignees may be held liable for violations of § 1641(f)(2). *Id.*

\* \* \*

To this reasoning, the Court would merely reemphasize that "disclosure statement" is not defined in § 1641(a) and that term can be construed to encompass post-assignment disclosures. The Court acknowledges that many of the instances in TILA where disclosures are mentioned address situations at the inception of the creditor-debtor relationship. E.g. 15 U.S.C. § 1604 (discussing model disclosure forms for mortgage loan transactions). But not all references to disclosures occur in the pre-assignment context. When Congress amended TILA in 2009, it added § 1641(g). See

> Helping Families Save Their Homes Act of 2009, Pub.L. No. 111–22 § 404, 123 Stat. 1632, 1658. That section states, "In addition to other disclosures required by this title," whenever a mortgage loan is sold, transferred, or assigned, "the creditor that is the new owner or assignee " must provide the obligor with contact information. 15 U.S.C. § 1641(g) (emphasis added). Congress then created a private right of action for violating this new subsection, as well as for violating 1641(f)(2). See id.
>
> As the 2009 amendments demonstrate, Congress considered post-assignment informational disclosures to be disclosures within the purview of TILA. By the plain terms of § 1641(g), assignees who fail to make that informational disclosure can be liable. There is no limitation of the term "disclosure statement" to mean only those disclosures made initially between the borrower and original creditor. The new § 1641(g) emphatically creates liability purely for the assignee's own disclosures or lack thereof. At the very least, the 2009 amendments broadened the meaning of "disclosure statement" to include disclosures made by the assignee post-assignment. The Court concludes that when an assignee's servicer fails to make a disclosure under § 1641(f)(2), then the error is apparent from the face of that particular disclosure statement and an assignee may be liable.

St. Breux, 919 F.Supp.2d at 1377 (emphasis added).

If this Court adopts the Fannie Mae's argument that it cannot be liable because it is not the "creditor" of the subject loan, then assignees can never be liable for violations of TILA. This directly contradicts the title of Section 1641 "Liability of assignees. In light of the above, Plaintiff respectfully requests this Court to find that "assignees" like "creditors" can be liable for violations of TILA and that the limitation on assignee liability under Section 1641(e)(1) does not apply to violations that can only occur post-origination.

### B. Section 1640(a) of TILA provides for a private right of action for a failure to provide an accurate payoff statement upon request under Section 1639g

As a threshold matter, "TILA is a consumer protection statute, and as such must be construed liberally in order to best serve Congress' intent". Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998); *See also* Begala v. PNC Bank, Ohio, N.A., 163 F.3d 948, 950 (6th Cir. 1998) ("We have repeatedly stated that TILA is a remedial statute and,

8

therefore, should be given a broad, liberal construction in favor of the consumer."); Fairley v. Turan-Foley Imps., Inc., 65 F.3d 475, 482 (5th Cir. 1995) ("The TILA is to be enforced strictly against creditors and construed liberally in favor of consumers…"). Even technical or minor violations of TILA impose liability. Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989).

Defendants' second argument is that there is no private right of action for an alleged failure to provide an accurate payoff statement. First, to date, Green Tree has not provided an accurate payoff statement to Plaintiff. Irrespective of whether a private right of action exists, Section 1639g imposes a duty on a servicer to provide an accurate payoff statement within seven business days upon request. Green Tree neither denies it was required to provide an accurate payoff statement nor denies that it failed to provide a payoff statement. Section 1639g, titled "Requests for payoff amounts of home loan", states, "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g. A violation of Section 1639g is privately actionable through Section 1640(a), which states in relevant part: "Except as otherwise provided in this section, any creditor who fails to comply with **any requirement** imposed under this part […] with respect to any person is liable to such person…" 15 U.S.C. § 1640(a)(emphasis added). Section 1639g is "part" of TILA and imposes a requirement, and thus, is actionable under Section 1640(a). As such, Plaintiff respectfully asks this Court to find that Section 1639g is privately actionable pursuant to Section 1640(a).

There appears to be a dilemma in that while Section 1639g, and other provisions of TILA, impose an obligation on a servicer, Section 1640 does not provide for any liability of a servicer. As such, this Court must decide whether Fannie Mae, as an assignee of Plaintiff's

9

mortgage loan, can be held vicariously liable for Green Tree's violation of Section 1639g. For the reasons set forth below, and in accordance with the majority of opinions in the Southern District of Florida, Fannie Mae should be held vicariously liable for Green Tree's violation of TILA.

### C. Fannie Mae is vicariously liable for Green Tree's violation of TILA

To date, various courts in the Southern District of Florida have held that vicarious liability applies to TILA. Lucien v. Federal Nat. Mortg. Ass'n, 2014 WL 2184934 (S.D. Fla. May 23, 2014); Khan v. Bank of New York Mellon, 849 F. Supp. 2d 1377 (S.D. Fla. Mar. 19, 2012); Galeano v. Fed. Home Loan Mortg. Corp., 2012 WL 3613890 (S.D. Fla. Aug. 21, 2012); Kissinger v. Wells Fargo Bank, N.A., et. al., 2012 WL 3759034 (S.D. Fla. August 30, 2012); Montano v. Wells Fargo Bank N.A., 2012 WL 5233653 (S.D. Fla. Oct. 23, 2012)[5]. *But see* Holcomb v. Federal Home Loan Mortg. Corp., 2011 WL 5080324 (S.D. Fla. Oct. 26, 2011); Kievman v. Fed. Nat. Mortg. Ass'n, 901 F. Supp. 2d 1348 (S.D. Fla. Sept. 14, 2012).

Of the seven cases cited above, only two courts, Kievman and Holcomb, held that TILA does not impose vicarious liability on an assignee. Defendants rely on Kievman in their plea to the Court not to impose vicarious liability. However, based on the overwhelming majority of courts in the Southern District that have held that vicarious liability applies to TILA violations, Plaintiff respectfully asks this court to do the same.

Plaintiff acknowledges that the many of the above-cases deal with violations of Section 1641(f)(2), violations not relevant to the instant matter. However, the rationale holds true for all of TILA, and if there is vicarious liability for violations of Section 1641(f)(2), there is vicarious liability for violations of Section 1639g.

---

[5] Defendants do not address two of these cases.

Plaintiff also points out that Lucien, Cenat, and Runkle dealt with vicarious liability in the context of violations for failing to provide accurate payoff statement pursuant to 12 C.F.R. § 226.36(c)(1)(iii) of Regulation Z (now codified at 12 C.F.R. § 1026.36(c)(3)), which implements TILA. The court in Runkle found that:

> "[A] TILA plaintiff can sue for violations of § 226.36(c). TILA Section 1640, entitled Civil Liability, states that "any creditor who fails to comply with any requirement imposed under this part" is liable. 15 U.S.C. § 1640(a) (emphasis added). The heading of that subsection states that its content addresses "individual or class action for damages." Section 1639 is a part of TILA.
>
> ***
>
> [T]he Court finds that assignees can indeed be liable for their servicer's nondisclosures that violate TILA […] As have other courts before it, this Court construes the statutory language of § 1641(a) in context to find assignee vicarious liability.

Runkle, 905 F. Supp. 2d at 1331, 1333.

If this Court were to adopt the rationale in Kievman, Plaintiff has no adequate remedy at law for Green Tree's failure to comply with Section 1639g, rendering the language in that section meaningless. The Consumer Financial Protection Bureau (the "CFPB") has stated "a servicer's failure to provide accurate payoff statements in a timely fashion can cause substantial injury to consumers." *73 F.R. 44522, 44570 (Jul. 30 2008).*

Moreover, to further its remedial purpose, the Court is to liberally construe TILA's language in favor of the consumer. See Rodash v. AIB Mortgage, 16 F.3d 1142, 1444 (11th Cir. 1994).

TILA is a very detailed statute and had congress intended to limit vicarious liability, it would have. To deny Plaintiff redress under these circumstances would go against the very intent of congress and the very objective and policy of TILA. It would reward Green Tree for its unlawful violation of Federal law.

11

As such, Plaintiff respectfully asks this Court to align its position with the majority of other Courts in the Southern District and find that TILA does provide for vicariously liability. Additionally, Plaintiff respectfully asks this Court to hold Fannie Mae vicariously liable for Green Tree's violation of Section 1639g.

## CONCLUSION

For the reasons discussed above, Plaintiff, STEVE EVANTO, respectfully requests this Honorable Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint, order Defendants to file an Answer to Plaintiff's Amended Complaint, and grant such other relief as is just and proper.

Respectfully submitted,

LOAN LAWYERS, LLC
*Attorneys for Plaintiff*

By: /s/ Aaron Silvers_____
Aaron Silvers, Esq.
FBN 104811

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on October 24, 2014 with the Clerk of Court using CM/ECF along with having served all counsel of record or pro se parties identified on the service list incorporated herein in the manner specified, either via transmission of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notice of Electronic Filing.


John W. Bustard, Esq.
Shutts & Bowen LLP
200 E. Broward Blvd. Suite 2100
Fort Lauderdale, FL 33301
Counsel for Defendants
Service by CM/ECF

        LOAN LAWYERS, LLC
        *Attorneys for Plaintiff*
        2150 S. Andrews Ave., 2nd Floor
        Fort Lauderdale, FL 33316
        Telephone:   (954) 523-4357
        Facsimile:    (954) 581-2786

        /s/ Aaron Silvers_____
        Aaron Silvers, Esq.
        FBN 104811
        E-Mail: asilvers@floridaloanlawyers.com